DANIEL E. WILLIAMS (ISB 3920)
THOMAS, WILLIAMS & PARK, LLP
121 N. 9th St., Ste. 300
P.O. Box 1776
Boise, ID 83701-1776
Telephone: (208) 345-7800
Fax: (208) 345-7894
danw@thomaswilliamslaw.com

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMI L. LOUGH,<br><br>      Plaintiffs,<br><br>vs.<br><br>SUN HEALTHCARE GROUP, INC., a Delaware corporation; and SUNDANCE REHABILITATION CORPORATION, a Connecticut corporation;<br><br>      Defendants. | Case No. CV _____<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

For her Complaint against Defendants, Plaintiff Ami L. Lough alleges:

### INTRODUCTION

Plaintiff Ami Lough bring this lawsuit based on Defendants' violations of The Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). The FMLA provides job security to employees who must be absent from work because of their own illnesses, to care for family members who are ill, or to care for new children. As for employees' own serious health

COMPLAINT AND DEMAND FOR JURY TRIAL, P. 1

conditions, Congress found that employees' lack of job security during serious illnesses that required them to miss work was particularly devastating. "It is unfair for an employee to be terminated when he or she is struck with a serious illness and is not capable of working." *S. Rep. No. 103-3 at 11-12, 103d Cong., 2d Sess.* (1993). In response to these problems, the FMLA entitles covered employees up to twelve weeks of leave each year for their own serious illnesses or to care for family members and guarantees them reinstatement after exercising their legal rights. In this case, Defendants denied Ami Lough her FMLA rights and retaliated against her for attempting to exercise her FMLA rights.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Ami L. Lough is a citizen of the United States residing in Ada County, Idaho.

2. Defendant Sun Healthcare Group, Inc. ("Sun Healthcare") is a Delaware corporation with its principal place of business in Irvine, California.

3. Defendant Sundance Rehabilitation Corporation ("Sundance") is a Connecticut corporation with its principal place of business in Albuquerque, New Mexico, authorized to do and doing business in Idaho. Sundance is a wholly-owned subsidiary of Defendant Sun Healthcare.

4. Sun Healthcare's stock is publicly traded on the NASDAQ stock exchange as "SUNHD."

5. According to Sun Healthcare's Annual Report, Form 10-K, filed on or about March 5, 2010, with the United States Securities and Exchange Commission ("the 10-K"), Sun Healthcare's "subsidiaries provide nursing, rehabilitative and related specialty healthcare services

COMPLAINT AND DEMAND FOR JURY TRIAL, P. 2

principally to the senior population in the United States. Our core business is providing inpatient services, primarily through 183 skilled nursing centers, 14 assisted and independent living centers and eight mental health centers. At December 31, 2009, our centers had 23,205 licensed beds located in 25 states, of which 22,423 were available for occupancy. Our subsidiaries also provide rehabilitation therapy services to affiliated and non-affiliated centers and medical staffing and other ancillary services primarily to non-affiliated centers and other third parties. For the year ended December 31, 2009, our total net revenues from continuing operations were $1.9 billion." Throughout the 10-K, Sun Healthcare refers to itself and its subsidiaries as "Sun Healthcare Group" or "we."

6. Sun Healthcare files consolidated financial information with the SEC, which includes in the aggregate the financial performance for all subsidiaries. Sun Healthcare's filings do not break down revenue or expenses by subsidiary, but rather by three "principal business segments" of Sun Healthcare: inpatient services, primarily skilled nursing centers; rehabilitation therapy services; and medical staffing services.

7. Defendant Sundance is considered by Sun Healthcare to be part of its rehabilitation therapy services business segment.

8. Upon information and belief, Defendant Sun Healthcare maintains a central human resources department for its rehabilitation therapy services business segment.

9. Sun Healthcare provides consolidated investment news and information to investors through its internet site www.sunh.com.

10. According to the 10-K, Sun Healthcare and its subsidiaries had 30,029 employees.

COMPLAINT AND DEMAND FOR JURY TRIAL, P. 3

11. Defendant Sundance is the alter ego and general agent of Defendant Sun Healthcare in that Sun Healthcare directs the internal affairs and daily operations of Sundance.

12. This Court has jurisdiction over this case pursuant to 29 U.S.C. § 2617(a)(2) and 28 U.S.C. § 1331.

13. This Court's supplemental jurisdiction over Plaintiff's pendent state claims is proper pursuant to 28 U.S.C. § 1367, because the state claims are related to and are part of the same case or controversy as that giving rise to the FMLA claims.

14. Venue of this action is proper in the United States District Court for the District of Idaho pursuant to 28 U.S.C. § 1391, because the events giving rise to Plaintiff Ami Lough's claims occurred in the District of Idaho. Venue is proper in the Southern Division of the United States District Court for the District of Idaho pursuant to Dist. Idaho Loc. Civ. R. 3.1.

## FACTUAL ALLEGATIONS

15. Plaintiff incorporates paragraphs 1 through 14 above.

16. On approximately March 14, 2005, Plaintiff Ami Lough became an employee of Defendant Sun Healthcare through another of Sun Healthcare's subsidiaries in Boise, Idaho, as a Restorative Nursing Assistant.

16. In approximately October, 2007, Ami Lough became an employee of Defendants as a Rehabilitation Technician at their facility operated at Capital Care and Rehabilitation Services, in Boise, Idaho.

17. In 2009, Ami Lough became pregnant. On June 4, 2009, she went to an appointment with one of her physicians for a prenatal fetal monitoring test and ultrasound.

COMPLAINT AND DEMAND FOR JURY TRIAL, P. 4

Based on the testing, Ami Lough was told she needed to be admitted to the hospital "immediately."

18. Upon receiving this information, Ami Lough went to her car and used her cell phone to call her immediate supervisor with Defendants, Jennifer Bartino, Therapy Program Manager. Ms. Lough informed Ms. Bartino of her physician's instructions that she be immediately admitted to the hospital. Ms. Bartino told Ami Lough to drive to Sundance, leave her car there and Ms. Bartino would take her to the hospital. Ami Lough complied and Ms. Bartino stayed with her through the admission procedure until Ms. Lough was situated in her own hospital room.

19. Between approximately June 4, 2009 and June 8, 2009, Ms. Lough and Ms Bartino texted and talked multiple times during Ms. Lough's stay in the hospital.

20. On approximately June 8, 2009, Ami Lough was released from the hospital but restricted to bed rest.

21. On approximately June 10, 2009, Ms. Bartino informs Ami Lough that there is a corporate audit team expected and asks her to come in "off the clock" to help with filing, despite her knowledge that Ami Lough was restricted to bedrest.

22. On approximately June 12, 2009, Ms. Bartino calls Ami Lough again and tells her she really needs Ami to come in to help.

23. Ami Lough speaks with Ms. Bartino several other times between approximately June 8, 2009, and June 18, 2009.

24. On approximately June 18, 2009, Ami Lough has a followup appointment with her physician, who informs her that the results of the testing were incorrect and there was

COMPLAINT AND DEMAND FOR JURY TRIAL, P. 5

actually no problem with her pregnancy. That same day, Ms. Lough texts Ms. Bartino with this news. She also informed Ms. Bartino that she was ready and able to return to work. Ms. Bartino replied that Ms. Lough should bring in a doctor's note with any restrictions.

25. After obtaining a doctor's note that same day, Ms. Bartino informed Ami Lough that her position was not available anymore. When Ms. Lough came to Sundance, Ms. Bartino did not want her to go inside, so she came to the car and gave Ms. Lough short term medical disability forms and a Certification of Health Care Provider for Employee's Serious Health Condition (Family and Medical leave Act), along with money that Ms. Bartino owed her. Ami Lough asked Ms. Bartino what she was supposed to do now that she had no job and she was pregnant. Ms. Bartino stated that she and her husband had been "brainstorming" about Ami's situation and had concluded that perhaps she could "get FMLA."

26. When Ami Lough returned home from this visit to Sundance, Ms. Bartino had left a message for her stating that she "accepted her resignation."

27. On approximately June 19, 2009, Ami Lough contacted Chad James, an executive with Sun Healthcare, who advised her to contact the main human resources office.

28. On approximately June 24, 2009, Ami Lough sends FMLA paperwork to the local Sundance office.

29. In approximately mid-July, 2009, Ami Lough spoke with Connie Pierce with Defendants' human resources office in California. Ms. Pierce requested doctor's notes and records, but told Ms. Lough to hold on the other FMLA materials and not send them in.

30. After attempting to contact Ms. Pierce several more times in July, 2009 and leaving several messages, Connie Pierce finally told Ami Lough that they are "going with" the

COMPLAINT AND DEMAND FOR JURY TRIAL, P. 6

initial decision that she had resigned.

31.   On August 14, 2009, after undergoing significant stress and distress due to job loss, losing insurance benefits and being unable to find another job while pregnant, Ami Lough's son is born approximately two months early.

### FIRST CAUSE OF ACTION

(Violations of the FMLA)

32.   Plaintiff incorporates paragraphs 1 through 31 above.

33.   The FMLA, 29 U.S.C. § 2615(a), prohibits Defendants from interfering with the exercise of Plaintiff's right to take FMLA leave by making it unlawful for Defendants to "interfere with, restrain, or deny the exercise or attempt to exercise any right provided for under" the FMLA. Defendants violated the FMLA by their conduct, which included but was not limited to:

    A.   Interfering with and restraining Plaintiff from exercising her rights under the FMLA;

    B.   Retaliating against Plaintiff for exercising, or attempting to exercise her rights under the FMLA; and

    C.   Terminating Plaintiff for taking leave that was protected by the FMLA.

34.   Defendants unlawful conduct was willful and wanton and was done with malice or in reckless disregard for Plaintiff's rights under the FMLA.

35.   As a direct and proximate result of Defendants' violation of the FMLA, Plaintiff Ami Lough has lost salary, paid time off, and other employment benefits, as well as having suffered significant emotional distress.

36.   As a direct and proximate result of Defendants' violation of the FMLA, Plaintiff

COMPLAINT AND DEMAND FOR JURY TRIAL, P. 7

Ami Lough is entitled to her lost income, including benefits, plus an equal amount as liquidated damages, prejudgement interest on all unpaid compensation, and any actual monetary loss due to Defendants' willful violation of the FMLA. Plaintiff is also entitled to reasonable attorneys fees and costs based on Defendants' violations under 28 U.S.C. § 2617.

## SECOND CAUSE OF ACTION

(Intentional/Negligent infliction of emotional distress)

37. Plaintiff incorporates paragraphs 1 through 36 above.

38. The conduct of Defendants and their employees and agents toward Ami Lough described above constituted intentional, reckless and/or negligent infliction of emotional distress, and was extreme and malicious, for which Ami Lough is entitled to recovery.

39. As a direct and proximate result of Defendants' intentional, reckless and/or negligent infliction of emotional distress, Plaintiff suffered past and future lost wages, medical expenses, severe mental anguish, physical discomfort and other damages, mental, physical and emotional.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For damages equal to the amount of wages, salary, employment benefits and other compensation denied and lost to Plaintiff by reason of Defendants' illegal violations of the FMLA in amounts to be proved at trial;

2. For liquidated damages;

3. For damages for Plaintiff's pain, suffering and mental and emotional distress in an amount to be proved at trial;

COMPLAINT AND DEMAND FOR JURY TRIAL, P. 8

4.     For prejudgment interest;

5.     For costs of litigation, including attorneys fees;

6.     For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES.**

DATED this 3rd day of December, 2010.

                                  THOMAS, WILLIAMS & PARK, LLP

                                  */s/ Daniel E. Williams*
                                  Daniel E. Williams
                                  Attorney for Plaintiff